**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BRETT STORKS,

   Plaintiff,

vs.                  No. 1:19-CV-00695-RB-KRS

ANDREW SAUL, Commissioner of
Social Security,

   Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff seeks review of the determination of the Commissioner of the Social Security Administration ("SSA") that he is not entitled to disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. On October 2, 2019, in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. *See Order of Reference* (Doc. 15). Having considered Plaintiff's Motion to Reverse and/or Remand (Doc. 19), filed December 17, 2019; the Commissioner's response in opposition (Doc. 23), filed March 19, 2020; and Plaintiff's reply (Doc 24), filed April 2, 2020, the undersigned RECOMMENDS that the Court GRANT Plaintiff's motion for the reasons set forth below.

**I. PROCEDURAL POSTURE**

On March 28, 2017, Plaintiff filed an initial application for supplemental security income. (*See* Administrative Record ("AR") at 51). Plaintiff alleged that he had become disabled on March 1, 2017, due to problems with his knees, his ankles, his right foot, and his right shoulder; degenerative joint disease; a back condition; arthritis; gout; high blood pressure; and high cholesterol. (*Id.* at 51, 172-73). His application was denied at the initial level on June 17,

2017 (*id.* at 51-62, 81-84) and at the reconsideration level on September 15, 2017 (*id.* at 63-76). Plaintiff requested a hearing (*id.* at 90-91), which Administrative Law Judge Eric Weiss (the "ALJ") conducted on September 18, 2018 (*see id.* 27-50). Plaintiff was represented by a non-attorney representative and testified at the hearing. (*Id.* at 27-45). Vocational expert Thomas A. Greiner (the "VE") also testified at the hearing. (*Id.* at 45-49).

On October 18, 2018, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 15-22). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 7-8), and on June 12, 2019, the Appeals Council denied the request for review (*id.* at 1-5), which made the ALJ's decision the final decision of the Commissioner. On June 30, 2019, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g., id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment

or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 16-17). He first determined that Plaintiff had not engaged in substantial gainful activity since his onset date. (*Id.* at 17). He then found that Plaintiff suffered from the following severe impairments: right shoulder rotator cuff tear, bilateral knee tricompartmental osteoarthritis, lumbosacral spondylosis, and gout. (*Id.*). The ALJ also determined that Plaintiff had a history of obesity, but he found in a single sentence that this condition did not constitute a severe impairment or otherwise impact Plaintiff's functioning (*see id.* at 17-18), and he did not address the matter further in his decision (*see id.* at 18-22).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments which met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 18). Proceeding to the next step, the ALJ reviewed certain medical documentation as well as Plaintiff's activities of daily living, concluding that "despite his alleged impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity and

4

interaction." (*See id.* at 19-20). The ALJ also briefly summarized findings from unspecified "non-examining State agency physicians," observing in relevant part that those physicians had found that Plaintiff could perform "medium level work" and had determined "that the claimant could reach overhead *bilaterally* on an occasional basis." (*Id.* at 21) (citation omitted) (emphasis added). However, the ALJ appeared to find this restriction insufficient, determining that "the claimant is more limited" than the agency physicians had determined. (*Id.*).

Based on his review of "the objective medical evidence in the record" (*id.* at 21), the ALJ concluded that Plaintiff generally possessed an RFC to perform "light work" with multiple additional restrictions. (*Id.* at 18-19). Despite the findings by the "agency physicians" that Plaintiff could only reach overhead bilaterally on an occasional basis, the ALJ's RFC findings only included a restriction of "occasionally reaching overhead and across the body with [Plaintiff's] *right* dominant upper extremity." (*Id.* at 19) (emphasis added).

Moving to step five, the ALJ cited testimony from the VE, who testified that Plaintiff was able to perform his past work as an EKG technician "with the specified occasional overhead reaching and cross body reaching limitations in the RFC." (*Id.* at 21). The ALJ therefore concluded that Plaintiff was able to perform past relevant work, that this work was not precluded by his RFC, and that Plaintiff was not disabled. (*Id.* at 21-22).

## IV. DISCUSSION

Plaintiff argues that the ALJ failed to properly consider the impact of his obesity on his impairments at step three and on his RFC at step four. (*See* Doc. 19 at 18-19). Plaintiff also argues that the ALJ erroneously failed to include left-arm overhead reach restrictions in his RFC. (*See id.* at 16-17). Because remand is required as to these matters, the undersigned does not reach other purported errors alleged by Plaintiff.

### A. Obesity

In his decision, the ALJ addressed Plaintiff's obesity only briefly:

> The claimant has a history of obesity. I have considered the potential impact of obesity in causing or contributing to the co-existing impairments, however, there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. Therefore, the claimant's obesity is not a severe impairment.

(AR at 18). Plaintiff argues that the ALJ improperly evaluated the impact of his obesity on his impairments and functioning because the ALJ failed to discuss probative evidence showing that his obesity "meaningfully contributes to his disability." (Doc. 19 at 18-19).[1] The Commissioner contends that the ALJ adequately considered the impact of Plaintiff's obesity and that the evidence at issue does not support a contrary conclusion. (Doc. 23 at 8-9).

SSA policy recognizes that a claimant's obesity can impact the step-three determination as to whether other severe impairments meet or equal a listing-level impairment, as well as the step-four determination of the claimant's RFC. *See* SSR 02-1p, 2002 WL 34686281, at *5-7 (Sept. 12, 2002).[2] As such, the ALJ must factor any effects of obesity into both steps, without making any "assumptions about the severity or functional effects of obesity combined with other impairments." *See id.* at *1, 5-7. An ALJ does not need to discuss every piece of evidence he relies upon in gauging these matters, but the record must show that he considered all of the evidence, and he "also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

---

[1] To the extent that Plaintiff intends to challenge the ALJ's step-two determination that his obesity was not itself a severe impairment (*cf.* Doc. 19 at 18), his argument fails because the ALJ found other impairments to be severe. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]o advance beyond step two . . . a claimant need only establish, and an ALJ need only find, one severe impairment. . . . Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

Cir. 1996). Still, a reviewing court must review the ALJ's decision "as a whole" in order to prevent "unwarranted remands [that would] needlessly prolong[] administrative proceedings." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005). Reversal is not required where "confirmed or unchallenged findings made elsewhere in the ALJ's decision" confirm the ALJ's determinations at these steps. *See id.* at 734.

Several unpublished but persuasive Tenth Circuit decisions inform the undersigned's analysis. In *Smith*, the ALJ found that the claimant's obesity was a severe impairment but did not expressly discuss obesity in his RFC analysis. *See Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (unpublished). But because the claimant pointed to nothing in the record affirmatively showing "that her obesity alone, or in combination with other impairments, resulted in any further limitations," the court concluded that the ALJ had not erred in his analysis. *See id.* Similarly, the Tenth Circuit in *Razo* found that the ramifications of the claimant's obesity were "subsumed within the discussion of [his] other medical conditions," since the ALJ "specifically addressed the impact of [his] obesity on his other impairments" and the claimant had failed to "discuss or cite to medical or other evidence to support his claim that his obesity was disabling." *Razo v. Colvin*, 663 F. App'x 710, 716-17 (10th Cir. 2016) (unpublished) (citing *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004)). Finally, the Tenth Circuit held in *Rose* that the ALJ's failure to expressly mention obesity in the RFC determination did not require remand where he included relevant limitations and where the claimant cited no medical evidence supporting further limitations due to obesity. *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (unpublished).

Other persuasive authorities illustrate the limits of this line of decisions. For example, in *DeWitt*, the ALJ acknowledged the claimant's obesity as a severe impairment at the second step

7

of the sequential evaluation process and limited her to sedentary work with other restrictions. *See DeWitt v. Astrue*, 381 F. App'x 782, 785-86 (10th Cir. 2010). However, there was

> nothing in the [ALJ's] decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting those restrictions. Rather, it appear[ed] that the ALJ's RFC assessment was based on "assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments"—a process forbidden by SSR 02–1p.

*Id.* at 785 (quoting SSR 02-1p, 2002 WL 34686281, at *6). Because of the ALJ's failure to adequately consider the claimant's obesity in relation to her other impairments and her RFC, the Tenth Circuit remanded the case. *Id.* at 786.

More directly on point is a recent persuasive decision that Plaintiff cites from the Honorable Steven C. Yarbrough, United States Magistrate Judge. (*See* Doc. 24 at 2) (citing *Aragon v. Berryhill*, Civ. No. 17-1160 SCY, 2019 WL 1428353 (D.N.M. Mar. 29, 2019)). In *Aragon*, as here, the ALJ did not expressly address the claimant's obesity at step three of his evaluation or in the RFC. *See Aragon*, 2019 WL 1428353, at *4. In challenging this omission, though, the claimant pointed to a treating physician opinion—which Judge Yarbrough held had been improperly discounted—expressly finding that the claimant would need a scooter or a mobility device "due to [his] morbid obesity and related pain." *See id.* at *6. After reviewing *Smith*, *Rose*, and other unpublished Tenth Circuit decisions where the issue of a claimant's obesity had been properly handled, Judge Yarbrough held that the claimant in *Aragon* "has done what all these claimants did not. He has pointed to treating physician evidence that demonstrates his obesity in combination with his knee impairment impacts his ability to ambulate and results in greater functional limitations than the ALJ assessed." *See id.* at *6-8.

Here, too, Plaintiff has pointed to medical evidence indicating that his obesity has a greater impact on his functional limitations than the ALJ acknowledged. On a January 24, 2018 visit to treating physician Steven Ogas, M.D., Plaintiff was assessed with a number of

conditions, including arthralgia (joint pain) and obesity. (AR at 924-25). Dr. Ogas expressly opined that Plaintiff's obesity required management "especially with [his] chronic lower extremity arthralgias." (*Id.* at 925). This assessment draws an express connection between Plaintiff's knee pain and his obesity, illustrating that the latter meaningfully impacts the former. (*See id.*). Moreover, records from physical therapist David Scussel reflect that Plaintiff's obesity was one of the "personal factors and/or comorbidities impacting [his] plan of care" with respect to his treatments for tendinosis and osteoarthritis. (*See, e.g.*, AR at 735-38). Plaintiff also points to diagnostic imaging of his knee showing "[t]ricompartmental knee osteoarthritis with articular cartilage fissuring of the weightbearing surfaces of the medial and lateral compartments" (*see* AR at 359), an assessment that is suggestive of a significant association between his knee limitations and his obesity when viewed in the context of the foregoing records. *See, e.g.*, SSR 02-1p, 2002 WL 34686281, at *6 ("[S]omeone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."). Although the ALJ broadly addressed "imaging and some examinations" concerning Plaintiff's knee limitations (*see* AR at 20) and referred obliquely to "therapy notes" (*see id.* at 19), he generally did not cite these particular records,[3] and he did not address the nexus noted therein between those limitations and Plaintiff's obesity.

Although the Commissioner contends that Plaintiff has failed to point to medical evidence supporting the conclusion "that his obesity caused greater limitations than those found by the ALJ" (*see* Doc. 23 at 9), the aforementioned records, when taken as a whole, undermine that position. Moreover, the Commissioner appears to misunderstand the nature of the ALJ's

---

[3] The ALJ did cite the records that contain Dr. Ogas's assessment, but only to observe in a single sentence that Plaintiff's gout appeared to be "mostly controlled with medication." (AR at 20) (citing Exhibit 11F). The ALJ did not address any of Dr. Ogas's other findings. (*See id.*).

9

error. An ALJ is *required* to consider the impact of a claimant's obesity at steps three and four of the sequential evaluation process, as "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *See id.* at *6. In doing so, the ALJ *must* discuss not only the evidence that supports his findings, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010. By simply concluding in a single sentence that Plaintiff's obesity resulted in "no specific or quantifiable impact" on Plaintiff's functioning, without addressing the medical and nonmedical evidence supporting a contrary conclusion, the ALJ failed to follow the correct legal standards governing the consideration of a claimant's obesity. Moreover, because the ALJ failed to adequately address evidence concerning the impact of Plaintiff's obesity on the severity of his impairments and on his RFC, *see* SSR 02-1p, 2002 WL 34686281, at *5-7, the undersigned cannot conclude that his decision was supported by substantial evidence at either step three or at step four of the sequential evaluation process. Accordingly, the undersigned recommends that the Court grant Plaintiff's motion to remand on this basis, directing the ALJ to apply appropriate legal standards when evaluating and addressing the impact (if any) of Plaintiff's obesity on the severity of his other impairment(s) and on his RFC.

### B.  Incomplete RFC

At the reconsideration level of review—prior to the hearing and the ALJ's decision—agency physician Pravin G. Sampat opined that Plaintiff should be limited to only occasional overhead reaching of both his left and right upper extremities. (AR at 72-73). The ALJ expressly cited this limitation in the narrative explanation following his RFC determination. (*Id.* at 21). However, even though the ALJ found that Plaintiff was "more limited" than Dr. Sampat's findings had suggested (*see id.*), the ALJ only included a restriction of occasional overhead

reaching with the right arm, and not the left arm, in Plaintiff's RFC (*see id.* at 18-19). The ALJ's decision includes no rationale for excluding Dr. Sampat's reach restriction as to Plaintiff's left arm. Plaintiff argues that the ALJ's failure to include Dr. Sampat's left-arm overhead reach restrictions, despite appearing to endorse *greater* restrictions than those found by Dr. Sampat, was error requiring remand. (Doc. 19 at 16-17). The Commissioner acknowledges that the ALJ "admittedly appears to have overlooked" Dr. Sampat's limitation on left-arm overhead reaching, but he argues that this error was harmless. (Doc. 23 at 5-7).

The ALJ's failure to incorporate Dr. Sampat's restriction as to occasional left-arm overhead reaching, or to at least explain why he failed to incorporate this restriction, was indeed error. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see also, e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding error where the ALJ did not explain why he failed to include all restrictions in a medical opinion in claimant's RFC); *Clifton*, 79 F.3d at 1010 ("[T]he ALJ . . . must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Here, despite explicitly reciting the *bilateral* overhead reaching restrictions found by Dr. Sampat, and despite appearing to endorse even greater restrictions than those that Dr. Sampat found, the ALJ failed to include that restriction as to Plaintiff's left arm and failed to explain his reasons for doing so. Thus, as the Commissioner appears to concede, the ALJ's RFC failed to comply with the correct legal standards.

Because Plaintiff's obesity argument requires remand in any event, the Court need not address the Commissioner's harmless-error argument as to this issue and may simply direct the ALJ to fully set forth Plaintiff's correct RFC on remand. *See, e.g.*, *Griego v. Colvin*, Civ. No. 14-

647 SCY, 2016 WL 10592154, at *4 n.1 (D.N.M. Jan. 21, 2016) ("On remand, the ALJ should address [other evidence that she disregarded]. Not doing so in her decision constituted error. Because the Court is remanding this case, it need not address whether this error was harmless."). Nevertheless, on the record presented here, the undersigned recommends that the Court reject the Commissioner's harmless-error argument and grant Plaintiff's motion as to this issue.

The Tenth Circuit has cautioned "that a proper hypothetical question relating with precision all of the claimant's impairments is required in order for a VE's testimony to constitute substantial evidence to support the decision." *Sitsler v. Astrue*, 410 F. App'x 112, 120 & n.4 (10th Cir. 2011) (unpublished) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)). "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis*, 945 F.2d at 1492. Put another way, "[i]f the ALJ fails to include all of a claimant's RFC limitations in the hypothetical question, the ALJ cannot rely on the VE's testimony." *Gallegos v. Colvin*, No. CIV-13-799-M, 2014 WL 5306756, at *2 (W.D. Okla. Oct. 15, 2014) (citing, *e.g.*, *Hargis*, 945 F.2d at 1492).

Here, the ALJ's determination at step-five was premised primarily on the VE's response to a hypothetical RFC question at Plaintiff's hearing. (*See* AR at 21-22); (*see also id.* at 46-49) (VE testimony). However, just like the RFC that ultimately appeared in the ALJ's decision, the hypothetical RFC that the ALJ addressed to the VE lacked any reach restrictions as to Plaintiff's left arm (*see id.* at 47), even though the ALJ apparently concluded—and the parties apparently agree—that such restrictions should have been included (*see id.* at 21). Because the ALJ's hypothetical RFC question to the VE did not "relate with precision all of [the] claimant's impairments," the VE's response to that hypothetical question cannot constitute substantial

evidence in support of the ALJ's decision. *See, e.g.*, *Hargis*, 945 F.2d at 1492. Consequently, the absence of substantial evidence in support of the ALJ's step-five determination means that the Commissioner has failed to meet his burden to establish that Plaintiff can perform jobs existing in significant numbers in the national economy despite his limitations. *See Barnhart v. Thomas*, 540 U.S. 20, 25 (2003); *see also, e.g.*, *Valenzuela v. Colvin*, No. 10-cv-2896-PAB, 2012 WL 638133, at *6 (D. Colo. Apr. 25, 2013) (quoting *Sitsler*, 410 F. App'x at 120) (requiring remand, and rejecting harmless-error argument, where ALJ's hypothetical question to VE included only some limitations and did not offer explanation for failing to include other limitations supported by medical evidence).

On this record, with respect to the ALJ's ultimate finding of non-disability, the undersigned cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Therefore, the undersigned cannot conclude that the ALJ's omission of left-arm reach restrictions in Plaintiff's RFC was harmless. It is therefore recommended that the Court grant Plaintiff's motion on this basis and direct the ALJ to fully and accurately set forth Plaintiff's full RFC on remand.

### C. Plaintiff's Remaining Arguments

Plaintiff also argues that the ALJ took his testimony "out of context" in concluding that his left shoulder caused him no pain limitations or pain (*see* Doc. 19 at 17-18), and he contends that the ALJ erred in failing to construe his work history as evidence of his credibility as to the intensity, persistence, and limiting effects of his impairments (*see id.* at 19-20). In light of the recommendations made herein, the undersigned does not reach these additional claims of error. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Conclusion

The ALJ erred in his consideration of the impact of Plaintiff's obesity on his knee limitations, and he improperly failed to either incorporate left-arm reach restrictions into Plaintiff's RFC or explain his reasons for this omission. Because these errors require remand, the undersigned recommends that the Court **GRANT** Plaintiff's Motion to Reverse and/or Remand (Doc. 19), and that the Court **REMAND** this case to the SSA for proceedings consistent with these proposed findings.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_/s/ Kevin Sweazea_
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**